[No. B021971. Second Dist., Div. Four. Mar. 20, 1987.]

STEVEN FINE et al., Plaintiffs and Respondents, v.
SOUTHERN CALIFORNIA BUSINESS SALES, INC., et al., Defendants
and Respondents;
JAMES A. EDMONDS, JR., as Real Estate Commissioner, etc., Real
Party in Interest and Appellant.

COUNSEL

John K. Van de Kamp, Attorney General, Charles C. Kobayashi, Assistant Attorney General, Edmond B. Mamer and Lawrence P. Scherb II, Deputy Attorneys General, for Real Party in Interest and Appellant.

Ralph W. Plummer for Plaintiffs and Respondents.

No appearance for Defendants and Respondents.

OPINION

KINGSLEY, J.—In 1979, respondents owned a tavern—the Toehold Saloon—which they agreed to sell to Leanna Knemeyer. This transaction was handled by Southern California Business Sales, Inc., a real estate broker, which also acted as the escrow holder. Leanna Knemeyer agreed to pay the respondents $3,500 in cash, provide them with a $8,000 secured note, and assume an existing note for $7,000. To prevent the liquor license from lapsing, Knemeyer took possession of the property before the escrow closed.

At that time, the escrow holder told respondents that everything was going smoothly, and that the purchase price and the notes had been placed into escrow. In fact, the only money put into escrow was $2,250 to cover Southern California Business Sales's commission on the transaction. Knemeyer failed to assume the outstanding note or to make any payments on it. The holder of that memorandum subsequently sued the respondents for the $7,000 due under the acceleration clause.

After some nine months of operating the tavern, Knemeyer offered to return it to the respondents. All of the fixtures had been removed from the building, the liquor license revoked, and the lease terminated. In short, the business had been completely closed and all its assets disposed of without Knemeyer ever having paid into escrow any part of the purchase price. The respondents accordingly brought suit against Knemeyer and Southern California Business Sales. Both declared bankruptcy. Respondents then sought to recover from the Real Estate Education, Research and Recovery Fund— a fund established by law to recompense people defrauded by the conduct of anyone holding a real estate license. From the fund, the trial court awarded the respondents the maximum compensation of $10,000 and $44.83 in costs.

I

■ The Real Estate Commissioner appeals from that order. Section 10472, subdivision (b)(6) of the Business and Professions Code required that before an applicant might recover from the fund, he must prove "That he has diligently pursued his remedies against all the judgment debtors and all other persons liable to him in the transaction for which he seeks recovery from the Recovery Account." The commissioner here concedes that the applicants have made a diligent effort to recover from Southern California Business Sales and Leanna Knemeyer. It appeals, however, on the ground that certain officers and employees of Southern California Business Sales have not been sued in their individual capacities for their part in defrauding the respondents. Respondents support their failure to pursue these individuals—Donald Hardie, the president of Southern California Business Sales, his son, Brad Hardie, vice-president and salesman, and his daughter-in-law, Jackie Hardie, the escrow officer—on the ground that they are not personally liable.

In its statement of decision, the trial court characterized the actions of these individuals as follows: "[i]t is clear from the evidence that misrepresentations (whether intentional or negligent) were made by various representatives of SOUTHERN CALIFORNIA BUSINESS SALES, INC, .... The same representatives thereafter failed to disclose to plaintiffs facts material to the transaction, and filed a false document entitled 'Statement re Consideration'

with the Alcohol Beverage Control Department. The defendant corporation thereafter paid itself and thereby converted trust funds to which it was not entitled." The court went on, however, to note that the element of scienter was not well established and that it was purely conjectural to claim that respondents could have recovered against these individuals.

We agree with the trial court—in part. On the evidence before us, it is difficult to know whether Southern California Business Sales's misrepresentations were made by its employees fraudulently, intentionally or merely negligently. It is also unclear which of the employees might be personally liable. These uncertainties arise, however, because respondents chose not to proceed against any of these individuals, or to call them as witnesses or even to depose them. While the exact mental state of the corporation's employees is unknown, the evidence available is strongly suggestive that their misrepresentations were not wholly innocent and that a cause of action could be brought against them as individuals for negligent misrepresentation at least. (*Gagne* v. *Bertran* (1954) 43 Cal.2d 481, 487 [275 P.2d 15]; Rest.2d Torts, § 552.) As a substantial case can be made for the Hardies' individual liability, the question becomes whether there is sufficient evidence supporting the trial court's finding that the failure to sue them is excused.

We do not feel that there is. Business and Professions Code section 10472 puts the burden of proof on the respondents to affirmatively demonstrate that they acted with due diligence. If the respondents wish to claim due diligence in not pursuing the potential individual defendants on the ground that their misrepresentations were entirely innocent, it behooves them to present some evidence supporting this mental state of innocence. They have presented none. This total lack of evidence on the individuals' mental states is not the sufficient evidence necessary to uphold the trial court's ruling. Moreover, the inferential evidence for innocent misrepresentation is considerably less than that for fraud. All of the circumstantial evidence indicates that the falsehoods cannot have been unknown by the Hardies. A finding by the trial court that the respondents have met their burden of proof, therefore, is not supported by substantial evidence.

The issue remains whether the respondents are excused from pursuing the individual defendants because now, in hindsight, their chance of recovery from them is conjectural. We do not believe that they are. While the Hardies' liability was not certain, its probability was sufficiently great to call for at least some effort at discovery. None appears to have been made, nor has any excuse been suggested for this failure. As there was some likelihood of recovery from the Hardies, due diligence requires that at least minimal efforts have been made.

Accordingly, the judgment is reversed. In the interests of justice, parties are to bear their own costs on appeal.

Woods, P. J., and McCloskey, J., concurred.

The petition of plaintiffs and respondents for review by the Supreme Court was denied June 2, 1987.